IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 08-cv-01166-KMT-BNB

CHERRY CREEK MORTGAGE COMPANY, INC.,

    Plaintiff,

v.

JOHN S. K. CHIU; and
ROSE LIN CHIU,

    Defendants.

# ORDER

This matter is before the court on Plaintiff's "Amended Motion to Dismiss the First, Second, Fourth, Fifth and Sixth Claims for Relief" (hereinafter "Mot.") [Doc. No. 36, filed September 11, 2008]. The Defendants responded on October 1, 2008 [Doc. No. 37] and Plaintiff filed a Reply on October 16, 2008. [Doc. No. 41]. The court has determined that oral argument would not be of material assistance and this matter is now ripe for review and ruling.

This case involves the Defendants' John S. K. Chiu and Rose Lin Chiu (hereinafter "the Chius") purchase of a condominium from Cay Clubs International, LLC (hereinafter "Cay Clubs"). In connection with that purchase, the Chius obtained a mortgage from Cherry Creek Mortgage Company, Inc. (hereinafter "Cherry Creek"). As part of the mortgage process, Cherry Creek retained an appraiser to render a value assessment on the condominium and the Chius

executed a Promissory Note in the amount of $463,892.00. When the Chius defaulted on the note, Cherry Creek filed this action on June 2, 2008. The Chius claim that they were defrauded in the entire transaction, that the appraisal was vastly inflated and that Cherry Creek was part of a "large scale marketing and real estate scam engineered-in-chief by" Cay Clubs. The Chius filed their Answer and Amended Counterclaims on August 4, 2008. [Doc. No. 19].

Cherry Creek has moved to dismiss several of the Defendant's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6).

### *LEGAL STANDARD*

### *Failure to State a Claim Upon Which Relief Can Be Granted*

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

When ruling on a defendant's motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965 (2007). Further, the court is to make all reasonable inferences in the plaintiff's favor. *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1204 (10th Cir. 2002). In doing so, the Court distinguishes well-pleaded facts from conclusory allegations. *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002) (citations omitted).

To state a claim, a plaintiff's complaint must "show[ ] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp.*, 550 U.S. 544,127 S. Ct. at 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 1957)). The plaintiff must allege enough factual matter, taken as true, to make his "claim to relief . . . plausible on its face." 550 U.S. 544, —, 127 S. Ct. 1955, 1974 (2007); *Van Zanen v. Qwest Wireless, L.L.C.*, 522 F.3d 1127, 1129–30 (10th Cir. 2008). This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. *Bryson v. Gonzales,* 534 F.3d 1282, 1286 (10th Cir. 2008). The plausibility standard articulated by the Supreme Court in *Twombly* did not displace Federal Rule of Civil Procedure 8(a)(2), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erikson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curium); *Hughes v. Colorado Dept. of Corrections*, 2009 WL 112830, *2 (D. Colo. 2009). The issue in reviewing the sufficiency of a plaintiff's complaint is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims. *See Scheuer*, 416 U.S. at 236.

In evaluating a 12(b)(6) motion to dismiss, it is appropriate to look to whether the plaintiff has alleged each element necessary to establish a prima facie claim on which relief can be granted. *See Ruiz*, 299 F.3d at 1182-83; *Sutton v. United Air Lines, Inc.*, 130 F.3d 893,

902-903 (10th Cir. 1997). Although a plaintiff does not need to state each element of his claim precisely, he must plead minimal factual allegations on those material elements that must be proved. *See* Fed. R. Civ. P. 8(a); *Hall*, 935 F.2d at 1110.

*ANALYSIS*

  *A.*  *First Claim for Relief - Negligent Misrepresentation*

Colorado Jury Instructions set forth the elements of a claim for negligent misrepresentation in a business transaction: 1) the plaintiff gave false information to the defendants; 2) given in the course of the plaintiff's business, profession, employment or within a transaction in which the plaintiff had a financial interest; 3) the plaintiff gave the information to the defendants for the guidance of the defendants in a business transaction; 4) the plaintiff was negligent in obtaining or communicating the information; 5) the plaintiff gave the information with the intent or knowing that defendants would act or decide not to act in reliance on the information; 6) the defendants relied on the information; and 7) the reliance on the information supplied by the plaintiff caused damage to the defendants. CJI-Civ. 9.4 (2008) (as modified); *See Alpine Bank v. Hubbell*, — F.3d —, 2009 WL 215274, *8 (10th Cir. 2009).

In the Chius' counterclaim against Cherry Creek, they have alleged that Cherry Creek was a "preferred lender" for Cay Clubs and that Cherry Creek, Cay Clubs, the appraiser hired by Cherry Creek, and others all conspired and agreed to defraud them into buying nearly worthless property at an inflated price based on promises of lease profits. (Answer and Amended Counterclaims, Doc. No. 19, [hereinafter "Ans. & CC"] at ¶¶ 11, 16, 19, and 26.) The Chius' allege that Cherry Creek knew that the Chius were not qualified for the size of loans they were

undertaking and that Cherry Creek hired a particular appraiser with the knowledge that he would not render a neutral and unbiased opinion in his appraisal of the property. (Ans. & CC at ¶¶ 37, 12, and 15). The Chius allege that Cherry Creek was part of the "scam" and therefore made misrepresentations to the Chius that they could rely upon the appraisal, and then attempted to induce the Chius to get another loan on a second piece of property, all the while knowing that they were not qualified for even one of the loans, much less two. (Ans. & CC at ¶¶ 37, 25).

Taken in the light most favorable to the Chius, there are ample facts set forth in the counterclaim to support Claim for Relief One. It is alleged that the appraiser and Cherry Creek as a co-conspirator knew the appraisal was inaccurate and yet conveyed that erroneous information to the Chius to induce them to buy the Cay Clubs property and to take out the loans from Cherry Creek. In reliance on the appraised value of the property, the Chius went forward with the purchase transaction. (Ans. & CC at ¶¶ 31, 32). Instead of the $490,000 appraised value, the Chius assert the actual value of the property they bought was $90,000 and yet, the amount of the loan from Cherry Creek to purchase this property was $463, 892.00. (Ans. & CC at ¶¶ 19, 21). The counterclaim alleges that fees and charges to underwrite the loan were levied by Cherry Creek in the amount of $7,364.28. Additionally, the Chius claim they have lost their earnest money of $28,830.80 among other damage items.

There are sufficient facts alleged in the counterclaims such that, if proven, a reasonable jury could find in favor of the defendants. The defendants have alleged "factual matter, taken as true as it must be, to make their "claim to relief . . . plausible on its face." *Bell Atlantic Corp*,

550 U.S. 544, —, 127 S. Ct. at 1974. Further, the Chius have set forth their claim with sufficient particularity to meet the standard of Fed. R. Civ. P. 9(b).

### B.     *Second Claim for Relief - Breach of Fiduciary Duty*

It is axiomatic that a fiduciary relationship must exist before a breach of fiduciary duty can be claimed. The term fiduciary means "a person holding the character of a trustee;" one who must "act primarily for another's benefit." BLACK'S LAW DICTIONARY 753. In the context of a lender of money, the lender is not usually held to be a fiduciary for the borrower, since the lender is engaging in a transaction primarily to benefit itself, not the borrower. *First Nat. Bank of Meeker v. Theos*, 794 P.2d 1055, 1060 (Colo. App. 1990). However, confidential relationships can be formed when one party occupies a superior position over another with the opportunity to use that superiority to his advantage over the other. *Id*. at 1061; *United Fire & Casualty Co. v. Nissan Motor Corp.*, 433 P.2d 769 (1967). Since there are several ways in which a confidential relationship can arise, "the party claiming its existence must show that he justifiably reposed a special trust or confidence in the other to act in the claimant's interest" and "that the other party either invited or ostensibly accepted the trust imposed." *Id*.

In their counterclaims, the Chius have not set forth any statements or documents upon which they might have relied in believing that there was a fiduciary trust between itself and the bank. The fact that Cherry Creek is alleged to have been a "preferred" lender shows that Cherry Creek may have had a special prior relationship with <u>the sellers</u> of the property, Cay Clubs, but certainly not with the buyers, the Chius. *See Alpine Bank*, 2009 WL 215274 at 13. There are no facts alleged that would have induced the Chius to have relaxed the care and vigilance required

6

of strangers entering into a business relationship. Therefore, Claim for Relief Two, breach of fiduciary duty, fails to state a claim upon which relief can be granted and is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

    *C.*    *Fourth Counterclaim - Breach of Covenant of Good Faith and Fair Dealing*

Colorado recognizes that every contract contains an implied duty of good faith and fair dealing. *Golden v. Parker*, 138 P.3d 285, 292 (Colo. 2006); *Amoco Oil Co. v. Ervin*, 908 P.2d 493, 498 (Colo. 1995). *See also Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 717 (10th Cir. 1985) (explaining that the franchisor-franchisee relationship is one that requires the parties to deal with one another in good faith and in a commercially reasonable manner).

The good faith performance doctrine is generally used to effectuate the intentions of the parties or to honor their reasonable expectations. *See State Farm Mut. Auto. Ins. Co. v. Nissen*, 851 P.2d 165, 168 (Colo. 1993); *Bonanno v. The Quizno's Franchise Co. LLC,* 2008 WL 638367, *7 (D. Colo. 2008). The duty of good faith and fair dealing, however, only applies when one party has discretionary authority to determine certain terms of the contract, such as quantity, price, or time, which is set to occur at a date subsequent to the signing of the contract. *Id.* at *6.

"Discretion in performance occurs when the parties, at formation, defer a decision regarding performance terms of the contract leaving one party to set or control the terms of performance after formation. *Id*. (quoting *Amoco Oil* at 498.)

While the good faith performance doctrine may be used to protect a "weaker" party from a "stronger" party, weakness and strength in this context do not refer to the relative bargaining

7

power of the parties. "The relative strength of the party exercising discretion typically arises from an agreement of the parties to confer control of a contract term on that party. The dependent party then is left to the good faith of the party in control." *Amoco Oil* at 498-99.

The defendants' Claim for Relief Four, together with all the general allegations, is entirely devoid of any future exercise of discretionary power by either party. In their response to this motion, the Chius have been unable to point to any decision regarding performance terms of the contract which was deferred to a later date to be decided by one of the parties. Therefore, allowing every inference in favor of the Chius and accepting every allegation in the entirety of the counterclaims as true, as this court must in this context, the Chius have failed to state a claim for breach of contract due to the breach of the covenant of good faith and fair dealing, as it is defined by law, and Claim for Relief Four must be dismissed as a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

### D. *Fifth Counterclaim - Breach of Contract for Failure of Consideration*

The Chius' Fifth Affirmative Defense included in their Answer is a claim of "failure of consideration." (Ans. & CC at ¶ 31.) They have also claimed failure of consideration as the basis for the fifth counterclaim. (Ans. & CC at 16.) The Motion herein seeks dismissal of the counterclaim, not the affirmative defense.

Colorado requires a consideration to support a contract under the theory "that one should not be forced to give something for nothing . . . ." *Gertner v. Limon Nat. Bank*, 257 P. 247, 256 - 257 (Colo. 1927). When an obligor signs a note and deed of trust, there is a presumption that the agreements are supported by valid consideration. *Premier Farm Credit, PCA v. W-Cattle, LLC*,

155 P.3d 504, 520 (Colo. App. 2006); *Grant v. Oten*, 626 P.2d 764, 766 (Colo. App. 1981). The presumption may be rebutted upon a showing by the obligor of the absence of consideration. *Id.* Once the obligor presents evidence tending to prove a lack of consideration, whether valid consideration existed becomes a question of fact. *Id.*; *Grant*, 626 P.2d at 766. This is the current posture of the parties with respect to the Complaint [Doc. No. 1] alleging Breach of the Promissory Note (¶¶ 15-22) and the affirmative defense of failure of consideration. (Ans. & CC at ¶ 31.)

Colorado courts have consistently held that an allegation of failure of consideration, as well as mutuality, must be pled as an affirmative defense. *Denver Parents Ass'n v. Denver Bd. of Educ.*, 10 P.3d 662, 665-66 (Colo. App. 2000). *See Flatiron Linen, Inc. v. First American State Bank*, 23 P.3d 1209, 1211 (Colo. 2001). In a case where one party to a contract is trying to enforce a contractual provision against another party, a defense of failure of consideration asserts that the contract is not valid or legal and, therefore, the provision is unenforceable. This court cannot see any logical way this affirmative defense can become a stand-alone claim. The Chius' position is that a binding contract does not exist because there was no consideration. That claim is not a <u>breach</u> of contract, since by the very nature of the allegation there would be no contract to breach.

Therefore, the court finds that the Fifth Counterclaim, Breach of Contract - Failure of Consideration, fails to state a claim upon which relief can be granted and therefore should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Sixth Counterclaim - Violation of Colorado Securities Act

"Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and by whatever name they are called." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990). To that end, it enacted a broad definition of "security," sufficient "to encompass virtually any instrument that might be sold as an investment." *S.E.C. v. Edwards,* 540 U.S. 389, 393 (2004). The federal securities laws, just like the Colorado securities laws, define "security" to include "any note, stock, treasury stock, security future, bond, debenture, ... investment contract, . . . [or any] instrument commonly known as a 'security.'" See Section 2(a)(1) of the 1933 Act, 15 U.S.C. § 77b(a)(1), and § 3(a)(10) of the 1934 Act, 15 U.S.C. § 78c(a)(10).

The Tenth Circuit, in examining the Colorado securities laws, has held, "the local Colorado securities law and the federal securities law [are] "substantially identical." *Coffey v. Dean Witter Reynolds Inc.*, 961 F.2d 922, 927 (10th Cir. 1992) (*quoting Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 472 F. Supp. 402, 405 (D.C. Colo. 1979).

However, in *Reves* the Supreme Court ruled that the following classes or categories of notes are <u>not</u> "securities:"

> [T]he note delivered in consumer financing, <u>the note secured by a mortgage on a home,</u> the short-term note secured by a lien on a small business or some of its assets, the note evidencing a "character" loan to a bank customer, short-term notes secured by an assignment of accounts receivable, or a note which simply formalizes an open-account debt incurred in the ordinary course of business ... [and] notes evidencing loans by commercial banks for current operations....

*Reves* at 65 (citations and quotations omitted) (emphasis added). The promissory note at issue in this case, securing a mortgage on a home, clearly does not represent a security in the context of regulation of securities transactions. Therefore, the Chius' Sixth Claim for Relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Wherefore, it is **ORDERED**

Plaintiff's Amended Motion to Dismiss the First, Second, Fourth, Fifth and Sixth Claims for Relief [Doc. No. 36] is **GRANTED in part and DENIED in part**. The Motion is **GRANTED** with respect to Claims for Relief Two, Four, Five and Six and those counterclaims are hereby **DISMISSED**. The Motion is **DENIED** with respect to all other Claims for Relief.

Further, the Motion for a More Particular Statement is **DENIED**.

Dated this 12th day of March, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge